```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
```

```
_____
                                :
UNITED STATES OF AMERICA        :
                                :   Crim. No. 10-00335 (NLH)
     v.                         :
                                :
BRUCE DIXON,                    :   OPINION
                                :
          Defendant             :
_____ :
```

**APPEARANCES**:

BRUCE DIXON
FCI-GILMER
P.O. BOX 6000
GLENVILLE, WV 26351

    *Pro Se*

GABRIEL JOHN VIDONI
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
CAMDEN FEDERAL BUILDING U.S. COURTHOUSE
P.O. BOX 2098
401 MARKET STREET, 4TH FLOOR
CAMDEN, NJ 08101

    *Counsel for the United States*

**Hillman, District Judge**

Before the Court is Bruce Dixon's ("Defendant") Motion for Reduction of Sentence under the First Step Act 18 U.S.C. § 3582(c)(1)(A). (ECF 64). For the reasons expressed below, Defendant's Motion will be denied.

1

**Background**

Defendant was arrested on January 8, 2010 for robbing a contract driver for the United States Postal Service, in violation of 18 U.S.C. §§ 1951(a) and (b)(1) and § 2.[1] (See ECF 1, 45). Thereafter, on October 7, 2010, Defendant pled guilty, pursuant to a plea agreement, to knowingly and willfully obstructing, delaying, and affecting commerce and the movement of articles and commodities in commerce by robbery, as charged. (ECF 49). This Court subsequently imposed a sentence of 188 months of imprisonment followed by 3 years of supervised release. (ECF 55). Defendant's release date is projected for August 4, 2023. (ECF 64).

Defendant moved before this Court for compassionate release in a pro se motion filed on September 25, 2020 (the "Motion").[2][3] (ECF 64). The Government filed a letter brief in opposition to

---

[1] Defendant was originally charged with robbing a United States Postal Worker in violation of 18 U.S.C. § 2114. (ECF 1). The superseding indictment charged Defendant with the lesser offense of robbery under 18 U.S.C. §§ 1951(a) and (b)(1). (ECF 45).

[2] On February 25, 2021, the Federal Public Defender's Office advised the Court that it would not be entering an appearance on Defendant's behalf. (ECF 67).

[3] Defendant's pro se motion also asks the Court to review the video operations of FCI Gilmer and to order that FCI Gilmer preserve footage of the facility. (ECF 64 at 2). Defendant cites no basis for that relief and the Court discerns none. Therefore, the Court will not grant such relief.

the November Motion on March 15, 2021 (the "Opposition"). (ECF 70).

Defendant contends that he has exhausted his administrative remedies (ECF 64 at 3), which the Government does not contest (ECF 70 at 7).

**Legal Standard**

Under the First Step Act, a court may afford a defendant "compassionate release for 'extraordinary and compelling reasons.'" United States v. Sellers, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)). Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons ("BOP") to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." United States v. Raia, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) (citing § 3582(c)(1)(A)). "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." Sellers, 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court

3

finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." United States v. Pabon, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

**Discussion**

1. **Defendant has satisfied the exhaustion requirements**

   Defendant has fully exhausted his administrative rights in this case after applying to the warden of FCI Gilmer on July 28, 2020. (ECF 64 at 3-4). The warden denied Defendant's request for compassionate release on August 17, 2020. (Id.) The Government agrees that Defendant has exhausted his administrative remedies (ECF 70 at 7), as required by the statute.

2. **Defendant fails to establish "extraordinary and compelling" reasons for his release**

   Defendant argues that his pre-existing medical conditions place him at a high risk for complications from COVID-19. Specifically, Defendant argues that he is at an increased risk for severe illness and death if he contracts COVID-19 due to his underlying health conditions. (ECF 64 at 1-2). According to his Motion, he suffers from high blood pressure, and anxiety over COVID-19 and he is borderline diabetic. (Id. at 4).

4

Defendant does not identify how his conditions affect his ability to care for himself. (Id. at 1-5).

Though presented inartfully, Defendant in essence argues the ongoing COVID-19 pandemic, his pre-existing medical conditions, and the conditions of his confinement altogether constitute extraordinary and compelling reasons sufficient to reduce his prison sentence. (ECF 64). Defendant contends that he "will Die in this prison if he gets the COVID-19". (Id. at 1). He also argues that FCI Gilmer has not been enforcing social distancing rules and taking medical precautions to deal with the pandemic. (Id.)

The Government disagrees that Defendant presents "extraordinary and compelling" reasons for his release. First, it notes that in order for a medical condition to meet that standard, it must be of the type contemplated by § 3582(c) and as set forth in implementing policy statements issued by the Sentencing Commission. (ECF 70 at 5-7) (citing U.S.S.G. § 1B1.13, cmt. n.1(A)). Specifically, the Government points out that "[n]either high blood pressure, high cholesterol, nor pre-diabetes fall among the category of conditions recognized by the CDC" as the type of conditions that would result in severe illness if someone contracted COVID-19. (Id. at 7). The Government cites to various cases where courts from around the country have found that high blood pressure does not present an

5

"extraordinary and compelling" reason for his relief.  (Id. at 7-8).  The Government further argues that the BOP and FCI Gilmer in particular have put in place COVID-19 safety measures including social distancing, testing, vaccination and temperature checks.  (Id. at 3, 5).  Inmate movement is authorized in small numbers for the purposes of going to the commissary, doing laundry, taking showers, and having telephone calls.  (Id. at 3).  The Government finally states that the BOP is engaged in a home confinement initiative in order to relieve the strain on its facilities.  (Id. at 4).

The Court takes seriously Defendant's concerns about the effect of COVID-19 on his health and conducts its analysis on whether he has shown "extraordinary and compelling reasons for his release" accordingly.  That said, the Court holds that Defendant has not met that standard.  First, the Court finds instructive, although not binding,[4] the guidance by the

---

[4] While the Court looks to § 1B1.13 as directed to by the statute, it is not, standing alone, a determinative factor in light of a lack of quorum which has prevented the Sentencing Commission from updating § 1B1.13 in response to the First Step Act.  Even if the Court were to assume that a revised § 1B1.13 would expand the breadth of medical situations warranting release, the result here would not be different. As set forth in more detail in this Opinion, the Defendant fails to demonstrate that his personal circumstances and jail conditions in light of the pandemic alone, or in tandem, represent extraordinary and compelling reasons warranting a sentence reduction and that the applicable sentencing factors under § 3553(a) similarly support such a reduction.

Sentencing Commission as incorporated by § 3582(c). Defendant's medical conditions, while chronic, are not of the sort that militate toward release under § 3582(c)(1)(A). As the Government notes, the applicable guidance from the Sentencing Commission falls under Comment 1 under § 1B1.13 of the guidelines. (ECF 70 at 6); U.S.S.G. § 1B1.13, cmt. n.1(A). While the Court agrees that Defendant's medical conditions are chronic, it cannot say that it falls into the same categories as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia[,]" examples offered by the Sentencing Commission of the types of illnesses that might constitute "extraordinary and compelling circumstances." U.S.S.G. § 1B1.13, cmt. n.1(A). It also cannot say that Defendant's conditions substantially "diminish[] the ability of [Defendant] to provide self-care within the environment of a correctional facility and from which he...is not expected to recover." Id. Defendant has not shown that he cannot care for himself. To the contrary, he appears to be adequately managing his conditions with medication and oversight from the chronic care team at FCI Gilmer (ECF 64 at 4) (listing the medications that he receives and for what purposes while incarcerated). In the absence of specific evidence showing a more heightened risk, the Court declines to find that

7

Defendant's medical conditions, even with the possibility of contracting COVID-19, warrant his release.

Additionally, FCI Gilmer's mitigation efforts at controlling the spread of the coronavirus appear to be effective. Currently, FCI Gilmer has one (1) active inmate positive test and four (1) staff positive test.[5] Over the course of the pandemic, one (1) inmate has died as a result of infection by COVID-19, and 302 inmates have recovered from positive infections.[6] Id.

Defendant's vaccination status is unsurprisingly unclear, given that the briefing was completed prior to the vaccines being widely available. However, according to the BOP, 1436 inmates at FCI Gilmer out of a population of 1,600 have been fully vaccinated.[7] Given the well-established and accepted evidence that the available vaccines are both safe and effective, the Court believes that the vaccination rate inside FCI Gilmer weighs against Defendant's request for relief.

After a review of the record as a whole, the Court finds that Defendant, who currently seems to be managing his

---

[5] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited April 12, 2022).

[6] Id.

[7] Id.; see also FEDERAL BUREAU OF PRISONS, FCI GILMER, https://www.bop.gov/locations/institutions/gil/ (last visited April 12, 2022).

conditions effectively at FCI Gilmer, does not present "extraordinary and compelling" reasons supporting his release. The effective management of his health conditions through medication and FCI Gilmer's efforts at controlling the spread of COVID-19, taken together, undermine any finding that this Defendant presents "extraordinary and compelling reasons" for his release.

### 3. **3553(a) Factors weigh against Defendant's Favor**

Even if Defendant could establish extraordinary and compelling reasons for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction.  Here, they do not.

Defendant does not explicitly address the § 3553(a) factors in his pro se motion.  Nevertheless, in his petition that he submitted to the BOP, he argued that he has served more than 50% of his sentence, that he is not at a high risk of recidivism, and that he has a number of family members who would be willing to look out for him if he were released.  (ECF 64 at 4).  The Court understands these contentions as pertaining to an argument regarding the § 3553(a) factors.

The Court agrees with the Government's position that overall the § 3553(a) factors weigh against the Defendant. Specifically, the Government cites the fact that Defendant "and an accomplice stole over $20,000 from a New Jersey Post Office"

9

and "brandished what victims believed to be a real handgun, struck a postal employee in the face, and threatened other employees with violence." (ECF 70 at 8). It also cites that the record shows Defendant's multiple prior convictions "involving receipt of stolen property, filing fictitious reports, and possession of controlled substances with intent to distribute[,]" as well as probation violations and failures to appear. (Id. at 9). The Government finally notes that Defendant has a Career Offender designation under the Sentencing Guidelines. (Id.)

Judge Simandle, the judge previously assigned to the matter, after careful consideration of the record, imposed a sentence of 188 months of imprisonment to reflect the seriousness of the offense. At the sentencing hearing on February 25, 2011, Judge Simandle carefully parsed the § 3553(a) factors in determining an appropriate sentence. Specifically, Judge Simandle considered the fact that Defendant never led a law-abiding life, failed to appear in court on 21 discrete occasions, and has failed to support his seven children. (ECF 63, 18: 7-16). 18 U.S.C. § 3553(a)(1). Judge Simandle considered the seriousness of the crime of robbery that Defendant committed, where Defendant put multiple individuals in fear for their lives. (ECF 63 at 19:14-20); 18 U.S.C. § 3553(a)(2)(A). Further, Judge Simandle stated that deterrence

10

of robberies from the Post Office, both specific and general, was a paramount concern in crafting a sentence particularly because such a crime can really alter a victim's life. (ECF 63 at 20:24- 21:8); 18 U.S.C. § 3553(a)(2)(B). Judge Simandle also noted that given the seriousness of this crime, the fact that it was so similar to the separate crime of robbing a Post Office, and Defendant's overall criminal history that it was important that the public be protected from Defendant via a lengthy sentence. (ECF 63 at 21:9 - 22:9); 18 U.S.C. § 3553(a)(2)(C). The advent of COVID-19 does not change the balance in Defendant's specific situation where he has not shown that he is at a materially increased risk of serious illness or death while incarcerated or that there has been a material difference in the § 3553(a) factors that animated the original sentence.

**Conclusion**

For the reasons set forth above, Defendant's Motion for Compassionate Release (ECF 64) will be denied. An accompanying Order shall issue.

Dated: April 12, 2022                s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.